UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROSE ANN MOORE,

        Plaintiff,

vs.                                Case No. 8:06-CV-1319-JDW-EAJ

HILLSBOROUGH COUNTY BOARD OF COUNTY
COMMISSIONERS,

        Defendant.

_____/

## ORDER

**BEFORE THE COURT** is Defendant Hillsborough County's Motion for Summary Judgment (Dkt.24), and Plaintiff's pro se response in opposition (Dkt. 36).[1] Upon consideration, Defendant's Motion for Summary Judgment is GRANTED.

### Background

Plaintiff was employed by Defendant from 1974 to 2006. (Dkt. 1, ¶ 10; Dkt. 24) At all relevant times, she held the position of Senior Treatment Counselor for the Children's Services Department Emergency Shelter Care (ESC) Program. (Dkt. 26, Moore Depo. at 26) Specifically, Plaintiff supervised the Emergency Shelter Care (ESC) Program, a residential facility located on a 32-acre campus which houses abused and neglected children. (Dkt. 26, Moore Depo. at 45, 53) As a Senior Treatment Counselor, Plaintiff was responsible for "perform[ing] supervisory duties

---

[1] Plaintiff is *pro se* due to the suspension of her counsel from the practice of law in Florida. Plaintiff has accordingly been advised of the Rule 56 procedures pursuant to *Johnson v. Pullman, Inc.*, 845 F.2d 911 (11th Cir. 1988). (Dkt. 35)

pertinent to the intake, evaluation, diagnosis, treatment and case management of troubled children and their families which includes the clinical review and supervision of client files." (Dkt. 26, Moore Depo. Ex. 3).

In January 2006, Defendant terminated Plaintiff for what it claims were numerous allegations of misconduct, including failing to report allegations of child abuse, ignoring an incident involving a child inserting a battery into his rectum, failing to report her consulting business to the County for review of potential conflicts of interest, and allowing a worker who had been convicted of felony child abuse to remain employed as a child care worker. (Dkt. 24) Plaintiff contends that many of these allegations are unsubstantiated, false, or misrepresented. (Dkt. 36) She contends that her termination and Defendant's alleged failure to accommodate her alleged disabilities caused by a knee and a neck injury were in violation of the Americans With Disabilities Act. (Dkt. 1, ¶ 52; Dkt. 26, Moore Depo. at 72) Plaintiff also contends that she was retaliated against, including being terminated, for complaining about discrimination and for filing a charge of discrimination with the EEOC. (Dkt. 1, ¶¶ 52, 57)

a.      *Plaintiff's injuries and requests for accommodation*

In January 2004, Plaintiff fell while on the job and suffered a knee injury. (Dkt. 26, Moore Depo at 35, 54) She underwent surgery on her knee in June 2004. (Dkt. 26, Moore Depo. at 55) Plaintiff also suffered a neck injury in 2004. (Dkt. 26, Moore Depo. at 59) In 2004, presumably after her injuries, Plaintiff requested and was granted permission to change the meeting rooms for staff meetings to her building. (Dkt. 24-2, p. 16) In February 2005, Plaintiff submitted a written request for use of one of three golf carts, which were used by the maintenance staff, to traverse the campus.

2

(Dkts. 24; 26, Moore Depo. at 46-47, 49; Moore Depo. Ex. 4)[2] Following her written request, Plaintiff was granted use of a golf cart. However, Plaintiff was not granted exclusive use of the golf cart. When she needed to use it, she was required to sign up for it. (Dkts. 24-2, p. 16; 26, Moore Depo. at 61, 62) Plaintiff contends that she was penalized for failure to attend meetings that she could not attend when the golf cart was unavailable. (Dkt. 36, p. 3) Plaintiff also requested a motorized scooter but her request was denied. (Dkt. 24-2, pp. 16-17; Dkt. 26-2)

In September 2005, Plaintiff was relocated to another building on the campus. Plaintiff requested that the maintenance staff pick her up daily from the campus parking lot and transport her to the building by golf cart. Plaintiff's request was denied. (Dkt. 24-2, pp. 16-17) Plaintiff then requested permission to park near the building instead of in the campus parking lot. (Dkt. 24-2, p. 17; Dkt. 26, Moore Depo. at 62-63) Defendant allowed Plaintiff to park in the grass near the building, but required her to park on the southwest corner of the building near the steps rather than on the northwest corner of the building near the handicapped ramp. (Dkt. 24-2, p. 17; Dkt. 26, Moore Depo. at 64)

The office to which Plaintiff was relocated lacked a working phone, a computer, a computer desk and "an adequate chair." Plaintiff requested an "ergonomically safe and adequate office space." Plaintiff alleges that her requests were initially ignored. Plaintiff contacted Risk Management and

---

[2]Prior to her written request for the use of a golf cart in February 2005, Plaintiff contends that she made at least one verbal request to use a golf cart which was denied. (Dkt. 24-2, pp. 16-17; Dkt. 26, Moore Depo at 49-51) The record is unclear whether Plaintiff's verbal request occurred before or after her knee injury in January 2004. Whether Plaintiff made her verbal request before or after her injury is immaterial, however, because Plaintiff does not complain that her request was not granted or not granted in a timely fashion. Plaintiff's complaint is that "she never had exclusive rights to the golf cart as it was assigned as a shared vehicle for two components." (Dkt. 36, p. 3)

In addition, Plaintiff's written request, which did not mention her disability, requested use of a golf cart for the ESC program, not for her own personal use. (Dkt. 26, Moore Depo. at 54; Moore Depo. Ex. 4) This is also immaterial, as Defendant does not dispute its knowledge of Plaintiff's injury.

requested an inspection of her work area. In October 2005, a risk manager inspected Plaintiff's work area and recommended certain changes to the work space. By October 28, 2005, "the office was reasonably accommodated" and Plaintiff received "the appropriate chair." (Dkt. 24-2, p. 17)

c.    *Plaintiff's Termination*

In early 2005, there was a change in administration within the Children's Services Department. Tom Papin became the new Director of the Children's Services Department in January 2005, and Terri Balzer became the new Manager of the ESC Program in March 2005. (Dkts. 25, 27) According to Plaintiff, she "had basically no problems until after the new manager Terri Balzer arrived on March 14, 2005." (Dkt. 1, ¶ 15) Papin and Balzer claim that starting at the beginning of their tenure, they received numerous complaints about Plaintiff's work performance. (Dkts. 25, 27) Papin and Balzer attempted to counsel Plaintiff but contend that she was not receptive to counseling. (Dkts 25, 27) Defendant placed Plaintiff on the County's Performance Improvement Plan (PIP) on August 23, 2007. (Dkts. 25, 27, 36-2, p. 14)

On September 3, 2005, after being placed on the PIP, Plaintiff requested a meeting with Balzer and Papin to "review this P.I.P. status and the expectations you have set forth." (Dkt. 36-2, p. 11) She requested advance notice of the meeting and to have a witness present. (Dkt. 36-2, p. 11) On September 15, 2007, Balzer and Papin entered Plaintiff's office to have the meeting, but did not provide Plaintiff with advance notice and did not honor her request for a witness. (Dkt. 36-2, p. 12) Plaintiff refused to participate in the meeting. (Dkt. 36-2, p. 12) Plaintiff alleges that she attempted to exit the office but was physically blocked by Papin for several minutes before being permitted to leave. (Dkt. 36-2, p. 12) Specifically, Plaintiff alleges that when Papin entered her office, he "pull[ed] a chair back blocking the door entrance" and, as she attempted to exit, he "placed his hand

4

in the doorway." (Dkt. 36-2, p. 12)  Plaintiff reported that she was "held hostage" to the Sheriff's office.  An officer from the Sheriff's Office concluded that no criminal misconduct had occurred. (Dkt. 36-2, p. 14) Defendant contends that based on this incident it made the decision to commence termination proceedings. (Dkt. 25, 27) Plaintiff contends that on December 23, 2005, Balzer informed her that she was recommending Plaintiff's termination due to the failure of the PIP, Plaintiff's refusal to meet, and Plaintiff's incompetence in work assignments. (Dkt. 36-2, p. 50) Following a hearing, Plaintiff was terminated.  Plaintiff appealed her termination to the Hillsborough County Civil Service Board but her termination was upheld.  (Dkt. 23; Dkt. 26, Moore Depo. 79-80)

## *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (internal citations omitted).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  *Id.* at 1260.  All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and

admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

### *Discussion*

Plaintiff brings her discrimination claims pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. 12111 *et seq.*, and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. § 760.01 *et seq.* Because federal case law interpreting the ADA is applicable to claims arising under the FCRA, Plaintiff's claims arising from both statutes are analyzed simultaneously. *Reis v. Univ. City Develop. Partners, Ltd.*, 442 F. Supp. 2d 1238, 1243 (M.D. Fla. 2006) (citing *Wimberly v. Sec. Tech. Group, Inc.*, 866 So.2d 146, 147 (Fla. 4th DCA 2004)).

Plaintiff also alleges that Defendant retaliated against her, including terminating her, for complaining of discrimination and filing a charge of discrimination with the EEOC. (Dkt. 1, ¶ 52, 57). Plaintiff brings her retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e(b) *et seq.*, and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. § 760.01 *et seq.* However, Title VII only makes unlawful discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). As Plaintiff has alleged that she was retaliated against as a result of her complaint about disability discrimination, which is prohibited by the ADA, Plaintiff's claims will be construed pursuant to the

ADA. 42 U.S.C. § 12203(a); *see also Satchel v. Sch. Bd. of Hillsborough County*, No. 8:05-CV-2239-T-24-TBM, 2006 WL 2474261, at *1 n.2 *(M.D. Fla. Aug. 25, 2006) (pro se plaintiff's disability retaliation claims brought under Title VII construed as ADA retaliation claim).[3]  In any event, as the anti-discrimination provisions of the ADA and Title VII are similar, ADA retaliation claims are assessed under the same framework employed for retaliation claims brought pursuant to Title VII. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1987).

1.    *Plaintiff's Discrimination Claims*

The ADA prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112b(5)(A).  In this case, Plaintiff alleges that Defendant discriminated against her by failing to make reasonable accommodations and by terminating her on the basis of her disability. (Dkt. 1, ¶ 35, 45)

To establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate that: (1) she has a disability, (2) she is a "qualified individual, " and (3) the defendant unlawfully discriminated against her because of the disability. *D'Angelo v. ConAgra*

---

[3]  Plaintiff's assertion of her retaliation claims pursuant to Title VII appears to be the result of careless drafting of the complaint, presumably by her former counsel. As another example, ¶ 59 of the Complaint alleges that "[t]he violation of the Plaintiff's civil rights under the Florida Civil Rights Act of 1992 constitutes an act of invidious religion and national origin discrimination," despite the fact that Plaintiff does not allege that she was discriminated against based on her religion or national origin. (Dkt 1)  Defendant apparently does not object to the consideration of Plaintiff's "Title VII retaliation claims" pursuant to the ADA, as Defendant has stated that "she raises her retaliation claims under the ADA and Title VII." (Dkt. 24, p. 16)

*Foods, Inc.*, 422 F.3d 1220, 1225-26 (11th Cir. 2005). With regard to her termination claim, if Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for her termination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). If Defendant meets this burden of production, Plaintiff may still prove that the termination was discriminatory, for instance, by demonstrating that Defendant's reason is pretextual. *Id.; see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003). With regard to Plaintiff's reasonable accommodations claim, in addition to establishing a prima facie case, Plaintiff must identify a reasonable accommodation that would allow her to perform her job. *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998). If Plaintiff meets this burden, Defendant may rebut the claim by presenting evidence that the requested accommodation imposes an undue burden. *Id.*

A determination of whether a person is disabled is an individualized inquiry performed on a case-by-case basis and "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999); 29 CFR pt. 1630, App. 1630.2(j).[4] An individual is disabled within the meaning of the ADA when he possesses any one of the following: (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) is regarding as having such an impairment. *Id.* § 12102(2). A major life activity includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 12 CFR § 1630.2(i). A "qualified individual" is "an individual with a disability who satisfies the requisite skill, experience, education and other job-related

---

[4]Although the EEOC's administrative interpretations are not binding, they "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).

requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position. 29 CFR § 1630.2(m).

In this case, Plaintiff alleges that she is disabled due to a knee and neck injury that limit her ability to walk, bend, twist, crawl, stand and lift. (Dkt. 1, ¶¶ 13, 32)  Plaintiff alleges that she is a qualified individual with a disability because she can perform the essential functions of her job with reasonable accommodations, including "a golf car and an ergonomically sound office." (Dkt. 1, ¶ 14)  Defendant contends that Plaintiff does not have a disability because her injuries do not substantially limit any major life activity and that, even if she is disabled, she was able to perform the essential functions of her job notwithstanding her disability, so no accommodation was needed. (Dkt. 24)

Plaintiff cannot meet the first prong of a prima facie case -- that she had a disability. Although it is undisputed that Plaintiff suffered a knee injury in January 2004 for which she underwent surgery and was diagnosed with a neck injury in 2004, Plaintiff has presented only scarce evidence regarding her impairments and has failed to demonstrate that her impairments substantially limit her ability to work, walk or perform any other major life activity. The entirety of the evidence submitted by Plaintiff regarding her medical condition from January 2004, when she suffered her knee injury, to early 2006, when Plaintiff was terminated, can be easily summarized.

Plaintiff testified that when she was injured in January 2004, she was prescribed a cane for walking. Initially she used the cane all of the time, but then started wearing a brace and only used the cane sporadically. Plaintiff stopped using the cane all of the time because she "felt awkward wearing the brace and walking with the cane and just started having problems buckling." (Dkt. 26,

Moore Depo. at 56-57) After her surgery in June 2004, Plaintiff used crutches for a week. (Dkt. 26, Moore Depo. at 57) In October 2005, Plaintiff's doctor indicated that Plaintiff had achieved maximum medical improvement and that the permanent impairment rating of her body as a whole was 3% (Dkt. 36-2, p. 3).

The doctor indicated that Plaintiff's walking should be limited to 15 minutes per hour. (Dkt. 36-2, p. 3) Plaintiff testified that on September 21, 2005, she was treated by a doctor who told her that her neck was in bad shape." (Dkt. 26, Moore Depo. at 66) The doctor advised Plaintiff to return to normal activity as tolerated, continue home exercise, and continue taking medication for pain. (Dkt 26, Moore Depo. at 66-67; Dkt. 26, Moore Depo. Ex. 7) On September 27, 2005, Plaintiff's doctor indicated that there was no change in her clinical assessment and that she could return to work with unspecified limitations and restrictions on twisting, kneeling, stooping and crawling. (Dkt. 26, Moore Depo. Ex. 8). Plaintiff's doctor did not indicate that Plaintiff had any limitations or restrictions with regard to walking. (Dkt. 26, p. Moore Depo. Ex. 8).

On November 9, 2005, Plaintiff's doctor indicated that the "probable duration of condition" was 'permanent restrictions," and that the regimen of treatment to be prescribed was "use of a cane." (Dkt. 36-2, p. 30). The doctor also suggested "trying another series of Hyalgan injections," "continue light duty work restrictions" and "follow up visits." (Dkt. 36-2, p. 30). On November 29, 2005, the doctor indicated that there was no change in Plaintiff's functional limitations and restrictions and that Plaintiff had not achieved maximum medical improvement. (Dkt. 36-2, p. 31) On January 17, 2006, the doctor indicated that Plaintiff had not achieved maximum medical improvement. (Dkt. 36-2, p. 51) On a workers' compensation form, a box is checked indicating that "the injured worker's functional limitations and restrictions, identified in detail below, are of such

10

severity that he/she cannot perform activities, even at a sedentary level . . . as of the following date: 1-17-6." (Dkt. 36-2, p. 51)[5] However, there are no "functional limitations and restrictions" identified. (Dkt. 36-2, p. 51)[6]

An individual's ability to work is substantially limited only when the individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I). Plaintiff has not presented sufficient evidence that her injuries substantially limited any major life activity, such as working, walking or standing.[7] Plaintiff testified that her injuries did not prevent her from performing her job. (Dkt. 26, Moore Depo. at 61) She further testified that she explained to her doctor that "I had a job where I was in the office and I met with my children and that there was no need for me to do any walking," (Dkt. 26, Moore Depo. at 70) In addition, as of her deposition on July 11, 2007, Plaintiff was employed as an Adult and Community Education teacher by the Hillsborough County School Board. (Dkt. 26, Moore Depo. at 81-82) Plaintiff's testimony that her injuries did not prevent her from performing her job, along with her ability to hold a job with Defendant for several years following her injuries and subsequent

---

[5] According to the Hillsborough County Civil Service Board, Plaintiff's termination became effective on January 26, 2007. (Dkt. 26, Moore Depo. Ex. 11, p. 2) Therefore, evidence regarding Plaintiff's condition on January 17, 2006 will be considered. However, the undisputed evidence shows that Defendant's decision to terminate Plaintiff occurred before January 17, 2006.

[6] Plaintiff was diagnosed with major depression in October 2005. (Dkt. 36-2, p. 29) However, as Plaintiff does not allege or argue that her depression was a disability pursuant to the ADA, or that she was discriminated against based on her depression, whether Plaintiff's depression substantially limited any major life activity will not be evaluated.

[7] Plaintiff does not specify which "major life activities" were substantially limited. Plaintiff's complaint alleges that she "had difficulty walking, bending, twisting, crawling, standing and lifting." (Dkt. 1, ¶ 13) Plaintiff's ability to work, walk and stand are addressed in detail. Assuming that bending, twisting, crawling and lifting are major life activities, Plaintiff has failed to present evidence of substantial limitation of her ability to perform these activities.

11

employment as a teacher, indicate that she was not substantially limited from a class or broad range of jobs. *See Butler v. Grief Bros. Serv. Corp.*, 231 F'Appx 854, 857 (11th Cir. 2007) (Plaintiff, a machinist-electrician, failed to establish that he was substantially limited in his ability to work where he worked as roofer, mattress mover, handyman and truck driver after being placed on leave; continued to work for Defendant after diagnosis; and testified that he could still perform his job); *Standard v. A.B.E.L. Servs.,* Inc., 161 F.3d 1318, 1327 (11th Cir. 1998) (Plaintiff not disabled pursuant to § 12102(2)(A) of ADA where he admitted he was fully capable of performing his job).

As to Plaintiff's alleged difficulty walking and standing, the record does not establish substantial impairment. Wearing a brace and sporadic use of a cane cannot be said to rise to the level of substantial impairment. Although Plaintiff was limited by her doctor to 15 minutes of walking per hour, "the inability to walk for extended periods of time does not constitute a substantial limitation of a major life activity." *Quitto v. Bay Colony Golf Club, Inc.*, No. 2:06-cv-286-FtM-29DNF, 2007 WL 2002537, at *8 (M.D. Fla. July 5, 2007). "Someone who walks, sits, stands or sleeps 'moderately below average' is not disabled under the Act." *Rossbach v. City of Miami*, 371 F.3d 1354, 1358 (11th Cir. 2004); *see also Cribbs v. City of Altamonte Springs*, No. 99-730-CIV-ORl-19B, 2007 WL 33310904, at *4 (M.D. Fla. Oct. 18, 2000) (moderate difficulty walking does not constitute a substantially limiting impairment).

Moreover, Plaintiff has not presented evidence that her "problems walking and standing were any worse than suffered by many aging adults." *Allen v. U.S. Postmaster Gen.*, 158 F'Appx 240, 243 (11th Cir. 2005) (plaintiff's ability to walk not substantially limited where she could still go to the grocery store, load groceries, care for herself and her children and do laundry, and where her doctor noted that she could walk eight hours a day and that her disability was limited to only 3% of her

body). The record evidence is insufficient to create an issue of fact on which a jury could reasonably find that Plaintiff was substantially limited in a major life activity. *See Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1228-29 (11th Cir. 1999) (evidence insufficient to establish substantial limitation of a major life activity).

In addition, there is no evidence that Defendant "regarded" Plaintiff as being substantially limited in any major life activity. An individual may be regarded as having a disability if a covered entity "believe[s] either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *see also D'Angelo,* 422 F.3d at 1228. Plaintiff's testimony that Defendant never treated her as if she were disabled forecloses any argument that she was regarded as having a disability. (Dkt. 26, Moore Depo. at 61)[8]

In summary, Plaintiff has failed to show that she has a disability within the meaning of the ADA. Plaintiff has not introduced sufficient evidence that she is substantially limited in any major life activity. For this reason, she has failed to present a prima facie case of discrimination. As a result, Plaintiff's claims that she was terminated because of a disability and that Defendant failed to provide reasonable accommodations are without merit.

It is noted that even if Plaintiff could present a prima facie case, her claims would fail. As to her termination claim, Defendant has articulated a legitimate, non-discriminatory reason for its decision to terminate Plaintiff, numerous allegations of misconduct. (Dkt. 24, p. 1) Although

---

[8]Plaintiff contends, without proffering any evidence, that "Defendant noted in the approximately 30 charges of misconduct that an opinion submitted by her physician demonstrates a physical and mental impairment that prevents her from performing the essential functions of her position such as restraining children in the ESC Program when necessary, with or without accommodation." As Plaintiff has admitted that she could perform the essential functions of her job without accommodation and that Defendant never regarded her as having a disability, Plaintiff's contention is rejected. (Dkt. 26, Moore Depo. at 61, 70)

Plaintiff states that "the County presented approximately 30 allegations of misconduct, many unsubstantiated, many blatantly false, many misrepresented," Plaintiff has not presented sufficient evidence that Defendant's reason was actually discriminatory or that it was pretextual. Of the approximately 30 allegations of misconduct which Plaintiff contends are "many unsubstantiated, many blatantly false, many misrepresented," Plaintiff only addresses three in her opposition to Defendant's motion for summary judgment, and does not offer any evidence that they are pretextual.

Specifically, Plaintiff claims, without proferring any evidence, that Defendant has failed to submit evidence that the allegation that she ignored an incident where a child inserted a battery into his rectum was unfounded, that she had discussed her private business with her former supervisor and that the business had been inactive since its inception, and that she informed Papin that a child care worker was a convicted felon. (Dkt. 36, pp. 1-3) Plaintiff provides no response to the numerous other allegations of misconduct, including allegations that she took medical leave for worker's compensation appointments on occasions when she had no appointments, failed to comply with directives and complete assignments, failed to report an incident to the Child Abuse Hotline or local law enforcement, failed to comply with staffing ratio requirements, failed to complete mandatory Crisis Intervention Techniques training, failed to meet deadlines for completing assignments, turned in assignments that were inadequate, and improperly supervised her subordinates. (Dkt. 26, Moore Depo. Ex. 11).

The Court makes no finding as to the truth of those allegations.[9]  However, aside from her

---

[9]It is noted that one of the bases used by the Hillsborough County Civil Service Board to uphold Plaintiff's termination was that in July 2005 she was unable to perform the physical portion of the mandatory Crisis Intervention Techniques certification. Given that Defendant continued to employ her for at least a year and a half following her alleged failure to complete the training, this is insufficient evidence that Plaintiff's termination was based on her alleged disability. Rather, the evidence suggests that Defendant's decision to terminate Plaintiff was based upon a record of policy violations and inadequate performance. In addition, Plaintiff does not allege that she

14

bare contention, Plaintiff provides no evidence that Defendant knew that the allegations were false or that the reasons for her termination were pretextual. *See Gilbert v. U.S. Dep't of Justice*, No. 07-10488, 2007 WL 3032514, at *3 (11th Cir. Oct. 8, 2007) (plaintiff failed to meet burden of production by offering evidence that defendant's failure to rehire him was pretext for discrimination or retaliation); *McShane v. U.S. Attorney Gen.*, 144 F' Appx 779, 788 (11th Cir. 2005) (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1024025 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the defendant is entitled to summary judgment")); *Smith v. Quintiles Transnational Corp.*, 509 F. Supp. 2d 1193, 1206 (M.D. Fla. 2007) ("Other than her own bald assertions, Plaintiff has offered no evidence that the stated reasons for the adverse actions were pretextual").

Indeed, the only evidence presented by Plaintiff is her contention that in March 2005, during a meeting with Balzer, Balzer told her that her "surgery and resulting impairment which occurred on the job since Jan 2004 which does not allow [her] to compass the 32 acre campus without the aid of recently acquired golf cart" was no excuse for missing meetings. (Dkt. 36-2, pp. 6, 37) This lone remark, which occurred almost two years before Plaintiff's termination, is insufficient evidence of a discriminatory motive to terminate Plaintiff. "Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence" of discrimination. *Clark v. Coats & Clark,* Inc., 990 F.2d 1217, 1223 (11th Cir. 1993); *see also Miller v. Gen. Wholesale Co., Inc.*,

---

could not perform her job without the certification or that she requested an accommodation with regard to this training. *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (an employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand has been made).

15

101 F. Supp. 2d 1374, 1379-80 (N.D. Ga. 2000), *aff'd* 254 F.3d 74 (11th Cir. 2001) (employer's comments about reducing plaintiff's accounts so that Plaintiff would have more time to perform his dialysis, made eleven days prior to his termination, did not give rise to an inference that employer sought to terminate plaintiff due to his disability) In the absence of sufficient evidence, Plaintiff cannot sustain a claim of discriminatory termination.

As to Plaintiff's failure to accommodate claim, the undisputed evidence shows that Defendant granted Plaintiff the following accommodations: (1) permission to change the meeting rooms for staff meetings to her building, 2) use of a golf cart, 3) permission to park near her relocated building and 4) an "ergonomically safe and adequate office space," including an "appropriate chair." Plaintiff, while admitting that she had no need to traverse the campus, claims that Defendant denied her request for a motorized scooter, required her to sign up to use a golf cart, initially ignored her request for an "ergonomically safe and adequate office space," and required her to park on the side of her relocated building nearest to the stairs rather than the ramp. However, "an employer is not required to accommodate an employee in any manner in which the employee desires." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted). An employee is "not entitled to the accommodation of her choice, but only to a reasonable accommodation." *Id.*[10]

---

[10]When an employee requests an accommodation, it may be necessary for the employer and employee to engage in an "informal, interactive process" to determine whether and which reasonable accommodations are feasible. *See* 29 C.F.R. § 1630.2(o)(3). With regard to Plaintiff's request for a motorized scooter, Plaintiff and Defendant engaged in an interactive process whereby Defendant denied Plaintiff the scooter but granted Plaintiff permission to use a golf cart. (Dkt. 24-2, p. 16-17) In addition, Defendant's delay from September 19, 2005 to October 28, 2005 in providing Plaintiff an "ergonomically sound office" is not unreasonable. The record, which Plaintiff has not clearly developed, reflects that Plaintiff was able to use a "PC in [Building] # 39 which is suitable," was permitted to complete assignments in long hand, was given a computer on September 21, 2005, was given the office chair from her former office on September 22, 2005 (which the record does not reflect she had complained about prior to her reassignment), was provided an "inadequate smaller desk" on September 27, 2005, received "some

16

Moreover, Plaintiff admits that she could perform her job without any accommodation. (Dkt. 26, Moore Depo. at 61, 70) "[I]f an accommodation is not needed, the question of "reasonableness" does not arise. *Raines v. State of Fla.*, 983 F. Supp. 1362, 1373 (N.D. Fla. 1997); *see also Albright v. Columbia County Board of Educ.*, 135 F'Appx 344, 345 (11th Cir. 2005) ("Because we conclude that Albright is not disabled within the meaning of the ADA, the Board also was not required to accommodate her.   Moreover, the record clearly shows that Albright did not require an accommodation to perform her job.   It is undisputed that Albright performed her bus driving duties without an accommodation . . . .").

2)    *Plaintiff's Retaliation Claims*[11]

The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a). To establish a *prima facie* case of retaliation pursuant to the ADA, a plaintiff must show that 1) she engaged in statutorily protected expression, 2) she suffered an adverse employment action, and 3) the adverse employment action was causally related to the protected expression. *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.2d 1322, 1336 (11th Cir. 1999).

A.    *Exhaustion*

---

items from former office" on September 27, 2005, received an "attachment to existing desk for computer access" on October 18, 2005, was provided an inspection of her work space and an "ergonomic study" of her work area on October 25, 2005, and following the inspection, was provided an "ergonomically sound" office on October 28, 2005. (Dkts. 24-2, p. 17; 36-2, pp. 18, 45-47) *See Terrell v. USAir*, 132 F.3d 621. 628 (11th Cir. 1998) (delay of three months in implementing accommodation was reasonable).   As to Plaintiff's contention that she was required to park on the southwest corner of her relocated building near the steps rather than on the northwest corner of the building near the handicapped ramp, Plaintiff does not allege that she specifically requested to park on the northwest corner. The record only reflects that Plaintiff requested to park near her building, which Defendant allowed Plaintiff to do. (Dkts. 24-2, p. 17; 26, pp. 99, 102; 36-2, p. 45)

[11] The fact that summary judgment is granted as to Plaintiff's discrimination claim does not preclude her from succeeding on her retaliation claim. "[A]n employee need not prove [an] underlying claim of discrimination for [a] retaliation claim to succeed." *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056 (11th Cir. 1999).

17

An employment discrimination claim cannot be maintained unless the proper administrative prerequisites are met. Plaintiffs bringing claims pursuant to the ADA "must comply with the same procedural requirements to sue as exist under Title VII . . . ." *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999). Title VII requires a charge of discrimination to be filed within 180 days of the alleged unlawful act or within 300 days of the alleged unlawful act if the Plaintiff also files a complaint with a state or local agency, 42 U.S.C. § 2000e-5(e)(1). Likewise, "before filing suit under the ADA, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC." *Fry v. Muscogee County School Dist.*, 150 F' Appx 980, 981-82 (11th Cir. 2005) (citing 42 U.S.C. § 12117)).[12] The FCRA requires a charge to be filed within 365 days of the alleged unlawful act, *Fla. Stat.* 760.11(1).

Defendant argues that Plaintiff has not exhausted her administrative remedies because "the box for retaliation is not checked" on her EEOC Charge of Discrimination form. (Dkt. 24, p. 17) Defendant is correct that on Plaintiff's EEOC Charge of Discrimination form, which was filed with the EEOC on December 2, 2005 and amended on December 22, 2005, only the box for discrimination based on disability is checked. However, Plaintiff was not terminated until January 2006. The complaint alleges that "Defendant retaliated against Plaintiff for filing internal grievance, complaining of discrimination and eventually filing a charge of discrimination. The retaliation

---

[12] 42 U.S.C. § 12117 provides:

The powers, remedies, and procedures set forth in sections 2000e-42000e-5, 2000e-6, 2000e-8 and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

included terminating her." (Dkt. 1, ¶¶ 52, 57) Defendant appears to frame the complaint more narrowly, arguing that the adverse action alleged is Plaintiff's termination and the statutorily protected expression is her EEOC charge. (Dkt. 24, p. 16-18) Defendant submits that Plaintiff was required to file an EEOC retaliation charge before filing her lawsuit.

Plaintiff was not required to file an EEOC retaliation charge to exhaust her administrative remedies. "[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Baker v. Buckeye Cellulose Corp.*, 856 F.3d 167, 169 (11th Cir. 1998). "When a retaliation claim is based on adverse actions taken against the employee after the initial EEOC charge is filed, it can be said that the retaliation claim grows out of a properly filed employment discrimination charge, and it is not necessary for a plaintiff to file a second charge specifically alleging retaliation." *Houston v. Army Fleet Servs., L.L.C.*, 509 F. Supp. 2d 1043 (M.D. Ala. 2007) (citing *Baker*, 856 F. 2d at 169)).

B.     *Termination*

Defendant concedes that Plaintiff engaged in statutorily protected expression by filing an EEOC complaint and that she suffered an adverse employment action (termination), but argues that the two are not causally connected. To establish a causal connection, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (citations omitted). A causal connection is likely to be found where there is a "close temporal proximity" between the time an employer learns about protected activity and the adverse employment action. *Farley*, 197 F.3d at 1337.

However, "temporal proximity alone is insufficient to create a genuine issue of material fact

19

as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (*citing Clover*, 176 F.3d at 1355-56)). A plaintiff must show, at a minimum, that the decision maker was "actually aware" of the protected conduct at the time of the adverse employment action. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993). A causal connection is established if there is a close temporal proximity between the employer's awareness and the adverse employment action. *Roberts v. Rayonier, Inc.*, 135 F' Appx 351, 358 (11th Cir. 2005) (citing *Farley*, 197 F.3d at 1337)).

In this case, Defendant admits that it knew about Plaintiff's EEOC charge, but contends that there is no causal connection because it made the decision to begin termination proceedings in September 2005, prior to Plaintiff's filing of her EEOC charge on December 2, 2005 or the amendment to her EEOC charge on December 22, 2005. (Dkt. 24, p. 18; Dkt. 25, Papin Affidavit ¶ 5; Dkt. 27, Balzer Affidavit ¶ 4). "When an employer makes a tentative decision *before* the protected activity occurs, the fact that an employer proceeds with such a decision is not evidence of causation." *Saffold v. Special Counsel, Inc.*, 147 F' Appx 949, 951 (11th Cir. Sept. 13, 2005) (citing *Clark v. County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)); *see also Smith v. Quintiles Transnational Corp.*, 509 F. Supp. 2d 1193, 1204 (M.D. Fla. 2007) (no causal connection where decision to place plaintiff on performance improvement plan was made prior to plaintiff's complaint). However, Plaintiff alleges that she was informed on December 23, 2005 that Balzer had recommended termination. (Dkt. 36-2, p. 50) Thus, there is a factual dispute regarding when the decision to terminate Plaintiff was made. If Defendant's decision to terminate Plaintiff was made on December 23, 2005, close temporal proximity exists.

Although there is a factual dispute regarding the timing of Defendant's decision to terminate Plaintiff, in this case, that disputed fact is not material. Construing the facts in the light most favorable to Plaintiff, even if a causal connection were established, Plaintiff's claim would not succeed. "If a plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant to produce legitimate reasons for the adverse employment action. If the defendant does so, the plaintiff must show that the reasons the defendant gave were pretextual." *Shannon*, 292 F.3d at 715 (quoting *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2002). Defendant's burden of articulating legitimate reasons "is exceedingly light; the defendant must merely proffer [legitimate] reasons, not prove them." *Meeks v. Computer Assocs. Intern.*, 15 F.3d 1013, 1019 (11th Cir. 1994) (internal citations omitted). As discussed with regard to Plaintiff's discrimination claim, Defendant has articulated legitimate reasons for terminating Plaintiff, and Plaintiff has failed to proffer evidence of pretext. Accordingly, summary judgment is granted to Defendant.

C.    *Other "Adverse Employment Actions"*

In addition to alleging that Defendant retaliated against Plaintiff for filing a charge of discrimination, the complaint alleges that Defendant retaliated against Plaintiff for filing internal grievance and complaining of discrimination. (Dkt. 1, ¶¶ 52, 57) Informal complaints and internal grievances constitute statutorily protected expression. *Shannon,* 292 F.3d at 716 n.2. Specifically, Plaintiff states that she lodged a harassment complaint against Ms. Balzer and that "this precipitating event led to retaliation which [Plaintiff] acknowledges as efforts to impugn her integrity and ignore her physical limitations." (Dkt. 36, p. 2) The harassment complaint Plaintiff refers to is a memo she forwarded to the Hillsborough County Department of Human Resources on May 20, 2005 containing

21

a "summary of the many incidents, which have occurred since Ms. Balzer's appointment to the position in March 2005." (Dkt. 36-2, pp. 5-10) The memo states, in pertinent part:

> The writer has had surgery and a resulting impairment which occurred on the job since Jan 2004 which does not allow writer to compass the 32 acre campus without the aid of recently acquired golf cart. As a consequence, writer has not attended any staffings held in the administration building, the sed building, nor the county center where most staffings and training occur. When writer shared this with writer, she intimated that it was no excuse.

(Dkt. 36-2, p. 6) The remainder of the six-page memo chronicles a variety of complaints about Ms. Balzer which are unrelated to Plaintiff's alleged disability, and thus do not oppose "act[s] or practice[s] made unlawful" by the ADA. 42 U.S.C. § 12203(a).[13] Plaintiff claims that Balzer retaliated against her by taking "efforts to impugn her integrity and ignore her physical limitations." (Dkt. 36, p. 2) Apparently, these "efforts" consisted of a marginal performance review and placement on the County's Performance Improvement Plan in August 2005. (Dkt. 36-2, p. 22)[14] In addition, Plaintiff claims that her "reassignment to Building 41" was in retaliation for her May 2005 complaint. (Dkt. 36-2, p. 15) Assuming that Plaintiff has exhausted her administrative remedies with regard to this alleged form of retaliation despite the fact that she did not check the box for "retaliation" on her EEOC charge form, Plaintiff cannot establish a prima facie case of

---

[13]*See Saffold*, 147 F' Appx at 951 (where almost all of plaintiff's complaints stemmed from a personality conflict with a co-worker and had no relationship to race, the complaints did not constitute statutorily protected activity).

[14] It is disputed whether Balzer knew about Plaintiff's complaint to Human Resources. Plaintiff claims that when she received her marginal performance review, she "sign[ed] off on the evaluation citing that [Balzer] is retaliating against my harassment complaint." (Dkt. 36-2, p. 40) Balzer avers that the first time she became aware of a complaint by Plaintiff "about disability discrimination or related to an alleged disability" was in December 2005, when she learned about allegations Plaintiff made to the EEOC. (Dkt. 27, Balzer Aff. ¶ 5)

discrimination.[15]

To qualify as an "adverse employment action," "the action must either be an ultimate employment decision or else must meet some threshold level of substantiality. Ultimate employment decisions include decisions such as termination, failure to hire, or demotion." *Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004). "Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation under the ADA." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). Plaintiff's "marginal" performance evaluation, which Plaintiff does not allege had any tangible effect on her employment, does not qualify as an adverse employment action. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1241 (11th Cir. 2001) ("[C]ourts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as loss in benefits, ineligibility for promotional opportunities, or more formal discipline").

Defendant's placement of Plaintiff on the County's Performance Improvement Plan more closely constitutes an adverse employment action. Plaintiff alleges that the "P.I.P. is a tool, which is a step toward dismissal, demotion, suspension, etc." (Dkt. 36-2, p. 22) Defendant placed Plaintiff on the PIP based on its conclusion that Plaintiff was not receptive to counseling regarding her performance. (Dkt. 25, Papin Aff. ¶ 4; Dkt. 27, Balzer Aff. ¶ 3). As a result of her placement on PIP, Plaintiff alleges she was given additional assignments and reporting requirements and increased supervision, although she does not develop the record in this regard. (Dkt. 36-2, pp. 22, 43) *See*

---

[15] Plaintiff's action is "limited by the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination." *Chandra v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (citations omitted).

*Smith*, 509 F. Supp. 2d at 1203 (holding that plaintiff's placement on a performance improvement plan was an adverse employment action because it resulted in increased workload, increased reporting requirements, increased supervision, and temporarily prevented plaintiff from receiving pay raises or bonuses). Plaintiff's "reassignment to Building 41," while in and of itself not significant, may also constitute an adverse employment action since Plaintiff alleges that it accompanied Defendant's removal of her supervisory duties. (Dkt. 36-2, pp. 14, 43) *See Davis*, 245 F.3d at 1239 (reassignment with significantly different responsibilities constitutes a tangible employment action).

However, assuming that Ms. Balzer knew of Plaintiff's May 5, 2005 complaint to Human Resources about her, which Defendant disputes, and assuming that the complaint constitutes statutorily protected activity, Plaintiff cannot establish that her placement on PIP on August 23, 2004 or her reassignment to Building 41 on September 16, 2005 is causally connected to her May 5, 2005 complaint.

In this Circuit, it has repeatedly been held that a lapse of three or four months between the protected activity and an adverse employment action will not establish the requisite causal connection, in the absence of any other evidence of causation. *Higdon*, 393 F.3d at 1221 (citing *Clark v. Breeden*, 532 U.S. 268, 273 (2001)). Plaintiff's placement on PIP and reassignment to Building 41 occurred almost four months after she complained about Ms. Balzer to Human Resources. Plaintiff has not presented any other evidence that the decision to place her on PIP or to reassign her was related to her May 5, 2005 complaint. *See Smith*, 509 F. Supp. 2d at 1204 ("[T]he record is bereft of evidence to show that [Defendant's] decisions to place the Plaintiff on the PIP and terminate her were related in any way to the Plaintiff's . . . complaint."). In addition, even

24

if Plaintiff could establish a causal connection, Defendant has articulated legitimate, non-retaliatory reasons for placing Plaintiff on PIP (complaints regarding Plaintiff's work performance and Plaintiff's alleged failure to be receptive to counseling) and her reassignment (failure of PIP and refusal to meet) which Plaintiff has not presented sufficient evidence to rebut. (Dkt. 24, Papin Aff. ¶ 4; Dkt. 27, Balzer Aff. ¶ 3; Dkt. 36-2, pp. 12-14)[16]

Accordingly, it is **ORDERED AND ADJUDGED** that

1)      Defendant's Motion for Summary Judgment (Dkt. 24) is **GRANTED**.[17]

2)      The Clerk is directed to enter judgment in favor of Defendant and to close this case.

**DONE AND ORDERED** this __7__ day of January, 2008.

_____
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record
*Pro se* Plaintiff

---

[16]Plaintiff has submitted a composite exhibit containing, among other things, copies of a number of communications with various individuals and entities containing complaints about Balzer and various job-related matters. (Dkt. 36-2) It is noted that most of these communications do not mention, or minimally mention, Plaintiff's alleged disability or physical limitations. Aside from the May 20, 2005 memo to Human Resources, which Plaintiff alleges was a "precipitating event" that "led to retaliation," Plaintiff does not specifically allege that any other communication she made led to retaliation. To the extent that Plaintiff's other communications constitute "statutorily protected expression" and that Plaintiff believes them to be basis for retaliation, the result is the same.

[17]In Plaintiff's opposition to Defendant's motion for summary judgment, Plaintiff "requests a summary judgment in favor of the Plaintiff." (Dkt. 36, p. 5) Plaintiff has not filed a motion for summary judgment, and the dispositive motion deadline expired on September 21, 2007. (Dkt. 11) Moreover, since a determination has been made that Defendant is entitled to summary judgment, Plaintiff's request for summary judgment is denied.

25